WEBER CONSTRUCTION Co., INC., Respondent-Appellant, v. STATE OF NEW YORK, Appellant-Respondent. (Claim No. 43718.)

Third Department, July 27, 1971.

*McClung, Peters & Simon* (*Homer Peters* of counsel), for respondent-appellant.

*Louis J. Lefkowitz, Attorney-General* (*Richard A. Foster* and *Ruth Kessler Toch* of counsel), for appellant-respondent.

*Per Curiam.* This is an appeal by the State from a judgment of the Court of Claims, entered December 2, 1970, awarding claimant $107,089.80, plus interest, for delays and interference caused by the State, and cross appeal by claimant (1) from that part of said judgment which dismissed items 2 and 5, and (2) from an order, entered January 7, 1971, which denied claimant's motion to reopen the trial for the purpose of making a motion to conform the pleading to the proof adduced at the trial.

The contract was for the reconstruction of Fuller Road in Albany from Western Avenue to Central Avenue. The section in and about Washington Avenue north to Railroad Avenue included a grade crossing project, under order of the Public Service Commission, where the tracks of the New York Central Railroad cross Fuller Road. The contract was entered into on June 1, 1960 and provided for completion by December 31, 1961 but final acceptance by the State was January 8, 1963.

The claim was premised and tried upon the theory that the railroad failed to properly progress the relocation of the tracks, first to the temporary detour area and then from the detour area to the new bridge and that the State failed to force or take steps to induce the railroad to complete its work in a more rapid fashion.

A paragraph of the contract taken from the Public Works specifications provided, *inter alia*, that the contractor shall obtain the written approval of the Chief Engineer of the railroad company with reference to the details and the methods to be employed as to the construction, *et al.*, and which should be complied with before the beginning of actual construction. It further provided: '' The Contractor shall include in his unit prices bid for this work all the costs of these requirements including any expense occasioned by delay or interruption of his [its] work by reason of the operation or maintenance of the railroad facilities. ''

It is not disputed that the claimant knew, prior to bidding and acceptance of the contract, that the completion date of December 31, 1961 was dependent upon its compliance with the terms and conditions of the contract which included the necessary written approval of the railroad company. The

claimant, however, made no attempt to contact the railroad either before acceptance of the contract or during progress as to the railroad's proposed or actual progress but relied upon complaints to the State that the railroad was not proceeding fast enough and, additionally, for securing extensions of time from the State for that reason.

The Court of Claims, in substance, found: "Claimant had complained to the State concerning the railroad and it (the State) should have assumed the responsibility to order compliance with the scheduled work progress." In our opinion, this conclusion abrogates the terms and conditions of the contract and would make the State liable in contradiction of the terms of the contract itself.

The record establishes that before any work could be done at the grade crossing section it was necessary that the claimant provide an embankment for the railroad detour and complete the highway detour so that highway vehicles crossed the tracks at a new location during this construction.

In July of 1960 a proposed progress schedule was submitted on behalf of the claimant to the State. However, the State after this kept requesting a further schedule and the claimant did not furnish it. Apparently the original schedule called for construction on the new railroad bridge to commence in September of 1960 with the structure and new pavement to be completed by the middle of April, 1961. The railroad detour embankment was done in July of 1960, but the highway detour was not paved until November of 1960 and was not opened until December of 1960. The claimant's assertion that it could have proceeded with the railroad structure in September of 1960 is not substantiated by the present record. The highway detour was not useable until December of 1960.

It appears that after the highway was opened, the railroad completed its detour work on April 18, 1961 so that delay was at most 3½ months, attributable solely to the contractor's methods of operation.

The claimant shut down on the job at the end of January, 1961 and testimony was offered that this was because it could not do any further work as the bridge site had not yet been released by the railroad. Work started again on April 8, 1961. However, there was a strike against claimant from May 4–June 7, 1961. The claimant closed down from February 1, 1962 to April 23, 1962 and it appears that claimant spent about two months doing a job for Fuller Brush Corporation.

Upon this record it is established that the claimant was delayed in the progress of its work by the manner and method

in which the railroad proceeded with its constructions. However, it is also established that the claimant is responsible for substantial portions of any delay. The record does not establish that the responsibility for such delay can be attributed to the State. ' The claimant who had the responsibility according to the terms of the contract did not consult with the railroad or urge it to proceed with the construction. The State did urge the railroad to proceed more rapidly, but such action did not establish liability and there was no delay attributable to the State.

The judgment should be reversed, on the law and the facts, and claim dismissed.

SWEENEY, J. (dissenting). I dissent and vote to affirm. I am of the opinion that there is ample evidence in the record to support the trial court's finding that the State was responsible for the delays in claimant's work caused by the inactivity of the railroad.

The record demonstrates that claimant had finished the embankment for the railroad detour on July 15, 1960, whereupon it proposed to do all the work for the new bridge site between that date and April of 1961, its work schedule calling for about seven months to complete that part of the project. The railroad did not start its track work, however, until September 22, 1960, and did not complete the placing of its tracks on the temporary detour and removal of the main line tracks until April 18, 1961. On February 1, 1961 claimant shut down its work until April 3, 1961 when it was again resumed. The uncontradicted proof is that this was due solely to the fact that the railroad had not progressed its work to a point enabling claimant to do more of its work.

The new bridge to carry the tracks was ready for the placing of tracks on January 11, 1962. However, because the railroad wanted to wait " until the frost was out of the ground " it did not relocate its tracks from the temporary detour to the new bridge until April 18, 1962. This caused further delay in claimant's work in this area. During both periods of delay several letters were written to the State by claimant complaining of the delays and interference. The contract provided that all work affecting the railroad's right of way facilities was to be carried out under the joint supervision of the Department of Public Works and the railroad company. I disagree with the majority and find that upon this record the delays are attributable to the State due to its failure to require the railroad to co-ordinate its portion of the work with claimant's. (See *Forest Elec. Corp.* v. *State of New York,* 30 A D 2d 905.)

HERLIHY, P. J., REYNOLDS, STALEY, JR., and SIMONS, JJ., concur in *Per Curiam* opinion; SWEENEY, J., dissents, and votes to affirm, in an opinion.

Judgment reversed, on the law and the facts, without costs, and claim dismissed.